The opinion of the Court, was delivered by
Hornblower, C. J.
The case made at the Circuit, presents the following facts. On the 11th of March 1768, Robert James (the first) conveyed the premises in question, to Robert J ames (the second) his son, and the heirs male of his body lawfully begotten forever, with a limitation over in case of his death without such issue; which deed was proved by one of the subscribing witnesses, on the 4th of March 1801, and put on record in the clerk’s office of the proper county, on the 1st. of November 1828. Robert the second the grantee in tail under the said deed, entered upon, and continued in possession of the premises, until his death ; which took place some time in the year 1800.— He died intestate, leaving several children, among whom was his eldest son Robert James, the third, who immediately after the death of his father, entered into possession of the premises, and held the same until December 19th 1833, when he conveyed the premises for a valuable consideration to James Cook; he, Robert the third remaining in possession under an agreement with Cook, and continued in possession until he died on the 13th March *290 1834. He left at his death, seven sons and six daughters; the oldest of whom was his son Robert (the fourth,) the lessor of the plaintiff. He was born the 15th December 1805, and claims title to the premises in question under the aforesaid deed from his great grand-father Robert James, the first, to his son Robert second, in tail male.
The defendant sets up title under a deed made to him of the premises in fee, for a valuable consideration, by James Cook the aforesaid grantee of Robert the third the father of the lessor of the plaintiff, bearing date the 19th of February 1835.
After the death of Robert the second, the grand-father of the lessor of the plaintiff, to wit, on the 21st. April 1801, the whole farm described in the deed from Robert James, the first, of which the premises in question constitute a part, was divided by commissioners appointed by the Orphans’ Court, among the heirs at law of Robert James second, and in making that division, they set off in the first place, the premises in question, called the entailed premises, by metes and bounds to Robert third; who afterwards and while in possession of the whole farm, at different periods between the years 1808 and 1818, obtained from his brothers and sisters, releases or deeds of quitclaim for their interest in the said farm.
The defendant DuBois, purchased the premises for a full price, at a public sale thereof, made by Robert James third, under the .agreement aforesaid made between him and Cook his grantee; in pursuance of which sale, Cook made the deed to the defendant under which he now claims title — that the lessor of the plaintiff was present at that sale and made no objection or claim of title; but neither he, nor the defendant had at that time any notice of the existence of the deed, by which the premises in question had been given by Robert James, first, to Robert James second, in tail, except such notice as the law may imply, from the fact, of its being then on record. That the lessor of the plaintiff and Joseph James were executors of Robert James third — that with their consent, the defendant paid to the widow of Robert James third, after his death, one thousand eight hundred and sevent.y-two dollars thirty-seven cents, part of the purchase money agreed to be given by the defendant for the premises ;. for which sum, the lessor of the plaintiff and his said co- *291 executor, as such executors gave the defendant a receipt or acquittance — that the sum of six thousand one hundred and twenty-seven dollars and sixty-three cents, the residue thereof was paid by the defendant to James Cook; the real object of the deed from Robert James third to him, having been to secure a debt to that amount, due from Robert James third to the said James Cook.
On the ninth March 1832 the lessor of the plaintiff became insolvent and made an assignment pursuant to the act of assembly in such case made and provided, to Joseph S. Parker.
So much of this case as relates to the partition made by commissioners among the children of Robert James second, and the taking by Robert James third of quitclaims from his brothers and sisters — the conveyance made by him to James Cook — the sale and conveyance by Cook to the defendant — -the payment of part of the consideration money by defendant to the widow of Robert James third with the consent of the lessor of the plaintiff, and’the fact that the lessor of the plaintiff was present at the sale to the defendant, and put in no claim of title to the property, may all be laid out of the question. If the lessor of the plaintiff, had title as tenant in tail upon the death of his father; or in other words, if the deed from Robert James first, continued in force as a conveyance in tail, after the act of 1784, then none of those circumstances, nor all of them combined, can defeat the plaintiff’s title at law. The presence of the lessor of the plaintiff at the public sale by his father and Cook, and his apparent acquiescence therein after his father’s death, in recognising the payment made to his mother, by the defendant, of part of the purchase money, cannot divest him of his title, (at least in this Court,) and as he was then ignorant of his own rights, I should think, in no other Court. But if he can be affected by implied or constructive notice, and thus be involved in the consequences of a constructive fraud, we must leave it to another power to settle that matter.
if either can the rights of the parties in this suit, be affected by the assignment made by the lessor of the plaintiff as an insolvent debtor, in the year 1832. His father was then living — the lessor of the plaintiff had, at that time do interest or estate in the premises, that could pass by his assignment. He was only heir *292 apparent, not the owner of the estate — and could not therefore convey it.
This cause stands then upon the following questions: 1st. Whether the act of 1784. Pat. Rev. 53 54, was intended to limit, and has by its force and operation limited and cut down estates tail, created by deed, as well as such estates made by devise? And, if it has, then 2dly. Whether, as Robert third, did not alien prior to the act of 1820, which repealed the act of 1784, so far at least as respected its influence on estates tail created by deed, he could afterwards make any such conveyance as would bar the heir ? As to the power of the legislature, at that day to alter and direct the future course of descent of estates created by deeds antecedently made, I have no doubt. If restrained from doing so now, it must be by force of that clause in the federal constitution, which prohibits state legislatures from passing any laws impairing the obligation of contracts. But this law was passed before that constitution had any existence. The one was enacted in 1784; the other adopted in 1787. We are therefore relieved from any embarrassment upon that ground, if under other circumstances any might exist. By this, I do not mean to intimate an opinion that such a law now, would be unconstitutional. The effect of it would be very different from that attempted to be given to the act of 1812 respecting joint-tenancies, in the case of Berdan v. Van Riper, ante 7, argued and decided in this Court in February term 1837. The construction contended for in that case, was to alter the vested rights of living and original parties, to a pre-existing deed — absolutely and at once lo change the estate in their hands. Not so in this case. It only regulates the future descent of property, without disturbing the existing and vested rights of any one. Dismissing therefore that branch of the objection, let us enquire whether the provisions of the act of 1784, extend to estates created by deed.
The doubt arises on the last clause of the second section of the statute, (Pat. Rev. 53, 54) which is as follows; “And that no entailment of any lands, or other real estate, shall continue to entail the same, in any ease whatever, longer than the life of the person to whom the same hath been, or shall be first given or devised by such entailment.” It is argued by the plaintiff’s counsel, that the word entailment in this clause, must be under *293 stood to mean devise ; because it is used in the preceding clause as synonymous with that word. It unquestionably is so; for the act uses the two words in the following connection; “ agreeably to the devise or entailment, after the decease of the first devisee, to all the estate in the devised premises which the testator was entitled to, or could have devised.” Thus qualifying aud limiting the sense in which the word ^entailment, is there used, to entailment by devise only, for had the legislature intended to use the word entailment, as synonymous with, d.eed or gift as distinguished from devise, they would have said, in the latter part of the sentence, “ after the decease of the first devisee or donee, or grantee, to all the estate in the devised, or granted premises, to which the testator, or grantor was entitled or could have devised, or granted.” Such inevitably must have been the structure of the sentence, if the legislature had in the body and previous part of that section been legislating about deeds as well as wills. We are compelled therefore to understand the word “ entailment ” in that part of the act, as tautological, aud unnecessary, or at most as meaning the same thing as devise. Aud it is argued with the more plausibility that we ought to restrain the word entailment in the last clause of the section, to the same meaning, not only because all the preceding part of the act, relates to devises, but because, the last clause of the second section does not profess to introduce a new or distinct topic of legislation, but is connected by the eonjunction, “and” with what precedes it.
It is no doubt a rule of construction, that if a statute makes use of a word in one part of it susceptible of two meanings, and in another part of the statute the same word is used in a definite sense, we are to understand it throughout, in that sense, unless the object to which it is applied, or the connection in which it stands, require it to be differently understood in the two places. (Den v. Schenck, per Ford, Justice 3 Halst. 34. Den v. Clark, per Kinsey, Chief Justice, Coxe R. 359. Bac. Abr. tit. Stat. 1.) But then there is another rule; viz. that a statute ought upon the whole, to be so construed, that if it can be prevented, no clause sentence or word, shall he superfluous, void or insignificant, (6 Bac. Abr. tit. Stat. 1. page 380. Section 2.) Let us try the clause before us by this rule; give the word entailment as there used, *294 the meaning contended for, and how will it read ? For if entail - merit means devise, we must read it so: it will then read “ and no devise of any lands, shall continue to entail the same, in any case whatever, longer than the life of the person to whom the same hath been, or shall be first given or devised by such devise.” This would not only be a very badly constructed sentence, but it would render the whole clause, nugatory, superfluous and insignificant. It would be a useless and unmeaning repetition in general terms, of what had before been specifically enacted. We are not therefore, at liberty to reject this clause of the statute, when without any violence to words, or the grammatical rules of construction, it is susceptible of a substantive and important meaning, and that too, upon a subject relating to and connected with the avowed object of legislation, indicated by the title of the statute itself, which was “to limit estates in tail.”
There is another circumstance which leads me to the conclusion that the legislature intended by this general clause to reach estates created by deed, and which so far as I recollect was not noticed at the bar. It is this, that in this clause, the legislature have used for the first time in the statute, the word “given.”— They do not say, “to whom the same shall be first entailed or devised” — but, “shall be first gimen or devised, by such entailment.” Now the word “ given” in its appropriate legal sense, is applicable to deeds, as well as to wills; and so understood, it gives effect to that word; and a very important effect too, — it gives it a place and a meaning in the statute; by making the statute embrace estates tail created by deed, as well as by will: Whereas if we read it, as synonymous with devise, it is unmeaning, worse than useless, ought to be stricken out, and must be rejected; which we have no right to do, if we can usefully and sensibly employ it where we find it.
I am therefore of opinion, that the act of 1784 does extend to estates tail by deed as well as by wills. They are within the title of the act, and though the preamble has a different aspect, and looks only to devises, yet the act itself is not to be restrained by that. It is nevertheless an appropriate preamble to two branches of the statute, and not inconsistent with the third subject of its enactments. When a statute is in itself ambiguous and difficult of interpretation, the preamble may be resorted to; *295 but not to create a doubt and uncertainty, which otherwise does not exist. ISTor have I any doubt, but on the 12th June 1799, when the legislature abolished fines and common recoveries, (lieu. Laws, 475. Pat. Rev. 411) they understood that entail-men is by deed were within the provisions of the act of 1784; otherwise they would never have abolished the only mode, by which a perpetuity, as odious, when created by deed as by devise, could be defeated.
It remains to be considered, what effect the statute of 1784 had upon the estate in question in this cause?
The statute de donis had never been enacted in this state, but nevertheless it was always considered as operative here before the revolution, and continued to be so after that event, by virtue of the twenty-second article of our constitution, until the 13th June 1799, when by an act of that date (Pat. Rev. 435,) our legislature declared that no act of parliament should have any force in this state, or be considered as law.
Whatever may be the effect of this declarative act, for it can hardly be called a repealing act, upon conditional estates created in this state since its passage, it cannot have any influence upon the case before us. The deed from Robert James, the first, under which the lessor of the plaintiff claims, was made in 1768, nearly thirty years before the repeal, if such it may bo called, of the statute de donis. The deed had taken effect, and the eslate was vested under it, in Robert James second, as an estate tail, and neither the act of 1784, nor the act of 1799 changed the nature of the estate, and put it back to what it would have been at common law; a conditional fee. “Certainly” to use the language of Chief Justice Kirkpatrick, in Den v. Robinson, (2 South: R. 706) “it cannot be said, that the repealing of an act, or the rendering it, for the future, inoperative, will destroy an estate already vested under it.” Pennington Justice, in Den v. Fogg (2 Penn. R. 826) speaks to the same effect. The estate remained then, an estate tail in Robert the second, until that event should happen, which by the operation of the act of 1784, would terminate the “entailment.” That event, was the death of Robert the second, the first donee in tail. When that happened, which was in the year 1800, the entailment ceased, and the premises either vested in Robert third, the next donee in *296 tail in the line of descent, in fee simple, or they reverted to the donor. In my opinion the premises vested in Robert third, in fee simple.
The first and second clauses of the second section of the act of 1784, it must be conceded I think, relate only to entailments created by devise; and they both of them specifically enact that the estate “shall be deemed to be the proper estate in fee simple,” of the person designated by the act, as the donee in whose hands the entailment is to cease. But the last clause merely declares that the entailment shall continue no longer than the life of the first donee in tail, without saying what shall then become of the entailed estate or premises. Nevertheless, we cannot suppose the legislature intended in the case of deeds any more than under devises, to restore the entailed premises to the donor. The object of the act was to limit estates tail, and it was a sort of- substitute for the process of common recovery. The entailment, it must be remembered, did not cease at any period during the life-time of Robert second. He died tenant in tail. True, the instant he died, the entailment ceased; but the same instant, the estate, secundum formam doni vested in Robert third. The same event which terminated the entailment, vested the estate in Robert third. There was not a moment of intervening time between the termination of the estate tail, and the vesting of the estate in Robert third. Both those things happened unoflatu, and at the same instant the statute enlarged the estate in his hands, to a fee simple.
That this is the effect of the clause in question, I have the less doubt, because it extends to estates by devise as well as by deed, and terminates the entailment precisely at the point fixed for that purpose by the two first clauses.
There is one other argument of the plaintiff’s counsel, that merits some notice. It is this, that if the act of 1784, enlarged the estate in the hands of Robert third, yet as he did not make any alienation prior to 1820, and as the act of 1820 repealed the act of 1784, so far as relates to deeds, the estate was again narrowed in the hands of Robert, to what it was prior to 1804, that is, to an estate tail under the statute de donis. There is certainly plausibility, if not soundness in this argument. The act of 1784 operated upon the estate in the hands of Robert third. It *297 enlarged it, and gave him a fee simple. Did a simple repeal of that statute divest that estate? The aet of 1784 recognized the estate in the hands of Robert second, as an estate tail. It did not abrogate or destroy, but only modified the estate, and limited its duration as an entailment. In 1799, when Robert second was still in life, the statute de donis was abolished or virtually repealed in this State. If the effect of that repeal was to restore the estate in the hands of Robert second to a conditional fee at the common law; then he died seized of such an estate in 1800, and it descended to Robert third, as a conditional fee. The estate then had ceased to be under the influence of the act of 1784; for that act operated only on estates tail, but if the repeal of the statute de donis had abrogated all such estates and restored them to conditional fees, there were thgn no estates tail in Hew Jersey to be operated upon by the aet of 1784; and the repeal of the statute de donis had also in effect repealed that act. 4 Griff. Law -Reg. 1261, n. 1. If this was so, then the subsequent express repeal of the act of 1784, by the act of 1820, Rev. Laws, 774, could have no effect on the estate in question, and Robert the third, having succeeded to the estate upon the deatli of his father, Robert second, in 1800, held it as a conditional fee, and having had issue, and afterwards in 1833 aliened to James Cook, in fee, the lessor of the plaintiff can have no title.
But this view of the case is not satisfactory to me; because, as I have before said, the repeal of the statute de donis, did not in my opinion abolish all estates tail then existing in Hew Jersey, or convert them into conditional fees at the common law. They remained estates tail though under the restricting influence of the act of 1784, and continued to do so, at least until 1820, when that act was repealed. What the effect of that repeal was, upon estates then in the hands of the first donee in tail, and not yet enlarged by the operation of the aet of 1784, is a question yet to be settled. If they remained estates tail, they are perpetuities that cannot now terminate but by failure of issue; they cannot be barred by any legal process. But the question in this case is, what was the effect of that repeal upon estates then held as estates in fee simple by. the second donee, under and by virtue of that aet; whether they continued to be so held, or were again to be considered as estates tail, discharged from the limitations which had *298 been imposed upon them by that act. This is the, real and all important question in this case; and to me I confess it is as embarrassing, as it is novel. If they continued to be estates “in fee Simple, under the enlarging influence of the act of 1784, then the lessor of the plaintiff, has no title; but if the repeal of that act, took off the enlarging influence, and they sunk back to estates tail, then the subsequent alienation by Robert third, to Cook in 1833, passed only his interest as tenant in tail, and the plaintiff is entitled to recover. And what is more, the estate in question, is a perpetuity that cannot be docked by any existing provisions of our law. It has escaped the curtailing influence of the act of 1784; for tho.ugh in jeopardy awhile under the limitations of that law, yet by the repeal of that act, it is revived and restored to all its life and vigor as an estate tail.
This, it may be argued, with much plausibility, if not unanswerably, is not like the ease of an estate created or acquired, or a contract made, under the sanction of an existing statute. A repeal of the statute, would not destroy such estate, or impair the contract. Where one statute is repealed by another, acts done, in the mean time, while it was in force, shall endure and stand, and be good and effectual; Dwarris on Stat. 675, 9 Law Lib. “ acts done.” If therefore, Robert third, had conveyed to Cook, before 1820, while the act of 1784 was in force, it would have been a good conveyance in fee, and would have been effectual, notwithstanding the repeal. The authorities upon this point are clear'and uniform. So in Den v. Robinson 2 South 706 this Court said, that repealing a statute, or rendering it for the future inoperative, will not destroy an estate, already vested under it. That is undoubtedly true, where the estate has been conventionally acquired, under 'the statute; and true also, perhaps, where the estate has been conferred by it. But, in this case nothing has been done upon the faith of the statute. It operated silently upon the estate in the hands of Robert third, and he was entirely passive in the transaction. The deed under which the lessor of the plaintiff claims, was made in 1768, and it would now give him a clear legal title, if it had not been interrupted by the act of 1784 limiting estates tail. If that act was out of the way, the lessor would deduce his title under the deed. But that act is out of the wa/y; in 1820, the Legislature repealed it; and that too, *299 without any saving that reaches this case. If the act of 1784 was iii force, the defendant would have a fee simple under its controlling power; but it is not in force, and was not, when Cook, (under whom the defendant claims) purchased in 1833. “ When an act of Parliament is repealed, it must be considered, except as to transactions passed and closed, as if it had never existed ” — 9 Law Lib. Dwari'is on Stat. 676. Therefore when Cook purchased, he did not do so upon the faith of that statute, for it had been repealed thirteen years before that time.
But it is said in answer to this, that the act of 1784 was in force in the year 1800, when Robert third, took the estate, and that therefore he took under the statute, and the statute having vested in him a fee simple, it could not be divested by a repeal of the statute. But is this proposition true? It rather appears to me, that he did not take, either the land or the estate in the land, under or by force of the statute. Pie took both by descent, under and by force of his grand-father’s deed.- The statute gave him no title or estate; it could give him none. PIis title was complete, independent of the statute. The statute only operated on the estate, he had under the deed, after it came into his hands, and the moment it was repealed, it ceased to operate on the estate.— Robert third, from that moment, had nothing to look to, by which to ascertain, the nature and quantity of his estate, but the terms of his ancestor’s deed, and by those terms, he was only tenant in tail. He could not appeal to a statute not in existence.
By the repeal of a repealing statute, the original statute is revived. Bac. abr.tit. Stat. (D.) fol. 372. The Bishops’ case 12 Co. 7. If then the act of 1784, repealed, so to speak, the operative words in the deed of entailment, does not a repeal of that act, upon the same principles, revive those words and restore them to their original force?
Another argument in support of this view of the subject, may be drawn from the saving clause in the repealing act, (the act of 1820) of estates held by devise. It declares that they shall descend, or be held as if that law had not been passed, that is, as if the act of 1784 had not been repealed. The application to this exemption, of the maxim, “Expressio unius est exclusio alterius,” leaves estates tail by deeds, exposed to the full effects of the repealing law. If the saving in favor of estates by devise, *300 was necessary, to prevent their relapse into entails, such a saving was equally necessary to prevent estates held under deeds from the same catastrophe. For if, the repeal of the act of 1784, did not restore estates by deed, in the hands of the second donee in tail, to their original character, neither would it have restored such estates, in the hands of the second devisee, in tail, and then the saving in the statute is unmeaning and useless.
Again i suppose the act of 1784, instead of enlarging had lessened, and restricted the estate in the hands of Robert third, and while the estate remained in his hands, the statute had been repealed, would he have been restored to his former estate? Or would it remain cut down and restricted ? Whatever would be the effect of such repeal in one case, I apprehend it would be the same in the other.
It must be admitted, that the effect of a repeal of a statute, is not uniform; but varies according to the nature and object of the statute, and the circumstances of the case, as
First. If a statute is in the nature of a contract, or a grant of power; a repeal of such statute, will not divest interests acquired, or annul acts done under it.
But the act of 1784, was in no sense a contradi or a grant. It was a pure act of general legislation, not intended for the benefit of Robert third, or of any other individual, but dictated simply by a regard to the public welfare, and involving only, a question of expediency.
Secondly. If the Legislature, ex mero motu, should by statute, give some property, belonging to the State, to an individual, a repeal of that statute, perhaps, would not deprive him of the property: it certainly would not, if the donee had accepted the bounty. It would he, a gift executed; and the Legislature can no more reclaim such a gift, than an individual can.
But this is not such a case. The Legislature had nothing to give to Robert third, and they gave him nothing; they only passed a general law, which, while it was in force, acted upon, and affected. his property, as every other general act of legislation affects individuals and their rights in regard to the subject matter of the particular statute.
Third. Acts done, or omitted to be done, under an existing law, which expose a man to punishment or prejudice of any kind, *301 if that law is repealed before its sanctions have been executed, the individual will escape the penalty, and be saved from the prejudice. As, if the whole criminal code, should this day be repealed, without any saving clause, every indictment would fall to the ground, and not an offender could be punished — aud
Fourthly. It will not be denied as a general proposition, that when a statute, which restricts a man’s natural rights, or modifies or restrains him in the use or enjoyment of his property, is repealed, he is thereby restored to those rights and to the use and enjoyment of that property, as before the passage of the law.— And it may be difficult to see why the application of this principle to the ease before us, would not restore Robert the third, to precisely the same right in, and control over the estate in question, that he would have had, if the act of 1784 had never exisied.
I confess that these considerations have embarrassed me very much. But nevertheless, as my brethren are both of opinion that Robert third continued to have a fee simple, notwithstanding the repeal of the act of 1784, it is not necessary for me to express any decided opinion on this point. And I am the more ready to yield to their judgment, because such a course is more congenial to all our habits of feeling in relation to estates tail.
The act of 1784 was a remedial law; it was dictated by a regard to our republican institutions, and intended to break down perpetuities. They were as odious in 1820, as they had been before, and the same reasons existed then, as in 1784 for putting an end to them; If then, there is any reasonable doubt, that doubt ought to be solved so as to effect the great object of all our legislation upon this subject, which has been to put an end to estates tail. Therefore let judgment be entered for the defendant.
Fokd, J. and Ryeeson, J. concurred.

Judgment for Defendant.

Cited in State v. Berry, 2 Harr. 81; Smith’s Ex'rs v. Tucker, 2 Harr. 84; Waters v. Quimby, 3 Dutch. 311.